Owen B. Walsh, Esq. Informal Opinion County Attorney No. 96-35 County of Nassau County Executive Building One West Street Mineola, N Y 11501
Dear Mr. Walsh:
You ask whether the Nassau County Civil Service Commission, which is considering the qualifications of an applicant for a security guard position, may disqualify the candidate based upon a criminal conviction notwithstanding that the Secretary of State, under General Business Law Article 7-A, has reviewed the applicant's criminal record and registered the individual as eligible for employment as a security guard within New York State. You state that the conviction in question was a misdemeanor and involved the discharge of an unlicensed weapon during a social event.
Article 7-A, known as the security guard act, was enacted in 1992. It provides that only individuals registered by the Department of State, or those whose application is pending, may be employed as security guards. General Business Law § 89-g(1). In order to be registered, an individual must satisfy the requirements set forth in section 89-h of the act, which include a provision that the applicant must
 not have been convicted of a serious offense, or of a misdemeanor in the state or of any offense in any other jurisdiction which, if committed in this state, would constitute a misdemeanor, and which, in the discretion of the secretary [of the Department of State], bears such a relationship to the performance of the duties of a security guard, as to constitute a bar to employment. Id., § 89-h(5).
"Serious offense" is defined in the act to include certain felonies.Id., § 89-f(13).
The act provides that the Department must issue a registration card unless it determines that the applicant does not meet the requirements of section 89-h or is unable to perform security guard functions. Id., § 89-k(1). Registration may be suspended or revoked in circumstances described in the act. Id., § 89-1.
The security guard act also provides:
 The provisions of this article shall govern notwithstanding any other law to the contrary and further, no local law shall be enacted which shall require any fee or license for the licensure [or] registration [of] security guards. Id., § 89-r. (Footnote omitted.)
Accordingly, you ask whether the Commission is free to reject a candidate based upon the candidate's criminal history when the Secretary has concluded, as evidenced by registration of the candidate, that the past conviction does not bar the candidate
from employment as a security guard.
We conclude that the Legislature did not intend to preclude employers from establishing hiring standards for security guards that exceed the registration standards of the act. It simply established minimum requirements for employment as a security guard and preempted local registration or licensing provisions.
In 1992, the Legislature set forth its findings on the necessity for enacting the act. L 1992, ch 336, § 1. It noted that the provision of security guard services was a rapidly growing industry in the State. At that time guards were not regulated, licensed, required to complete minimum training or required to undergo a criminal history check as a condition of hiring. The Legislature went on to state:
 The legislature further finds that the proper screening, hiring and training of security guards is a matter of state concern and compelling state interest to ensure that such security guards meet certain minimum recruitment and training standards as this industry and the demands placed upon it grows daily.
 Therefore, the legislature hereby finds and declares that because of the large number of unregulated and unlicensed security guards who may lack sufficient training and their nexus to the general public, the state should establish uniform standards for the employment, registration, training, enforcement and liability insurance coverage of security guards and the security guard industry within the state. Id.
Counsel to the Secretary of State has advised us that, in his opinion, these legislative findings indicate that the Legislature intended the security guard act to establish minimum qualifications for a person to be registered, and, therefore, employed as a security guard and that nothing in the findings or in the act itself suggests that the Legislature intended to pre-empt the discretion of an employer to impose higher standards, including higher standards regarding the applicant's criminal history. September 17, 1996 letter from Michael E. Stafford, Esq. to James D. Cole, Esq., attached.
Legislative history also supports the conclusion that the Legislature intended to establish minimum standards and not to bar employers from imposing more stringent requirements. The aim of the legislation was to protect the public by restricting security guard status to those qualified to perform security guard functions properly and to remove those who, due to criminal history or other reasons, should not be employed in the field. Bill Jacket, L 1992, ch 336, Memorandum in Support from Department of State, pp 26-27. It is consistent with this purpose for an employer to use hiring standards that are more stringent than the registration requirements of the act. The sponsor's memorandum in support of the legislation states that there is a compelling State interest to establish a Statewide minimumstandard for hiring and training security guards. Bill Jacket, L 1992 ch 336, Memorandum in Support, pp 7-8. A separate letter from the Senate sponsor also emphasizes that the public interest requires enactment of minimumstandards. Id., pp 11-12, June 25, 1992 letter from Senator Mega to Elizabeth Moore, Counsel to the Governor.
Accordingly, the Commission may evaluate the candidate's criminal history as it bears on fitness for employment as a security guard notwithstanding that the Department has registered the candidate.
We also note that the Legislature has established a State policy to encourage the licensure and employment of persons
previously convicted of one or more criminal offenses. A private employer or public agency may not deny a license or employment
 by reason of the applicant's having been previously convicted of one or more criminal offenses, or by reason of a finding of lack of "good moral character" when such finding is based upon the fact that the applicant has previously been convicted of one or more criminal offenses, unless:
 (1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought; or
 (2) the issuance of the license or the granting of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public. Correction Law § 752.
In a prior opinion, we stated:
 In making this determination, the licensing officer or employer is required to consider certain factors (see, id., § 753). One factor is the public policy of the State "to encourage the licensure and employment of persons previously convicted of one or more criminal offenses" (id., § 753[1][a]). Consideration must be given to a certificate of relief from disabilities or a certificate of good conduct issued to the applicant, which creates a presumption of rehabilitation in regard to the offenses covered by these certificates (id., § 753[2]). (See also, Op Atty Gen [Inf] 81-7, 82-73; Op Atty Gen [Inf] 84-37).
Accordingly, we conclude that the security guard act does not preclude the Commission from considering the applicant's criminal history and denying employment. That decision, however, must be in accord with the requirements of Correction Law Article 23-A.
The Attorney General renders formal opinions only to officers and departments of State government. This perforce is an informal and unofficial expression of the views of this office.
Very truly yours,
SIOBHAN S. CRARY, Assistant Attorney General